# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| LEANN SHURLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:17-CV-492 (MTT) |
| | ) |
| MCNEIL & MEYERS ASSET MANAGEMENT GROUP LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff Leann Shurley's Motion for a Default Judgment. Doc. 8. That motion is **GRANTED**, and the Plaintiff is awarded $36,455.

## I. BACKGROUND

On December 16, 2017, Shurley filed a complaint alleging that Defendant McNeil & Meyers Asset Management Group, LLC violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, and the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-391, *et seq.* Shurley alleges McNeil & Myers violated both the FDCPA and GFBPA "by sending letters containing false representations, misleading representations, and engaging in deceptive means in furtherance of their debt collection business, seeking to collect amounts not authorized by contract or statute, and engaging in unfair and unconscionable acts." *Id.*

On January 12, 2018, the Defendant was served with summons and complaint in accordance with Fed. R. Civ. P. 4 but has failed to file any responsive pleadings. A true

and correct copy of proof was filed with the Court on January 17, 2018. Doc. 5. On March 19, 2018, the Clerk granted an entry of default. The Defendant has not moved to set aside the entry of default. After Shurley moved for a default judgment (Doc. 8), the Court held a hearing to determine the Plaintiff's damages on June 26, 2018. Doc. 9.

## II. DEFAULT JUDGMENT STANDARD

At a party's request and following the Clerk's entry of default, the Court may enter a default judgment against a defendant who has failed to plead or otherwise defend. *See* Fed. R. Civ. P. 55; *Solaroll Shade and Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986). Entry of default judgment is committed to the discretion of the Court. *Hamm v. Dekalb County*, 774 F.2d 1567, 1576 (11th Cir. 1985). However, default judgment does not follow automatically from an entry of default. The Court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x 860, 863 (11th Cir. 2007). *See also Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1] As to requests for damages, the Court may conduct evidentiary hearings, although "no such hearing is required where all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

---

[1] The Eleventh Circuit has adopted as binding all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

## III. JURISDICTION

To enter a valid default judgment, the Court must, of course, have both personal and subject matter jurisdiction. *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1991); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatoviskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("When entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction [over both] the subject matter and the parties."). Here, the Court has subject matter jurisdiction over Shurley's FDCPA claims. 15 U.S.C. § 1692k(d). And the Court has supplemental jurisdiction over Shurley's state law claims under 28 U.S.C. § 1367(a) because those claims "are so related to [Plaintiff's federal] claims . . . that they form part of the same case or controversy under Article III of the United States Constitution."

Moreover, the allegations in Shurley's complaint sufficiently allege that the Court has personal jurisdiction over McNeil & Myers, a nonresident defendant. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249, 1257 (11th Cir. 2010) ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." (quotation marks and citation omitted)). A court has personal jurisdiction over a defendant if (1) the exercise of jurisdiction comports with the state's long-arm statute and (2) "[the] exercise of jurisdiction would [not] violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013); *see also* Fed. R. Civ. P. 4(e) (providing that federal courts may utilize the long-arm statute of the forum state).

Georgia's long-arm statute extends personal jurisdition over a nonresident defendant who "[t]ransacts any business within [the] state." O.C.G.A. § 9-10-91. Shurley's complaint alleges generally that McNeil & Myers "is a debt collection company operating within, and actively collecting consumer debts in, the State of Georgia," and, thus, the exercise of jurisdiction comports with Georgia's long-arm statute. Doc. 1 ¶ 7; *see Bailey v. Clegg, Brush and Associates, Inc.*, 1991 WL 143461, *2 (N.D. Ga. 1991). Moreover, the exercise of that jurisdiction does not violate the Due Process Clause: McNeil & Myers has "minimum contacts with [the state of Georgia] such that the maintenance of th[is] suit does not offend traditional notions of fair play and substantial justice." *See International Shoe Co. v. Sate of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945). McNeil & Myers attempted to collect a debt from Shurley by sending her mail and calling her at her home in Georgia and, thus, "purposefully established 'minimum contacts'" within Georgia sufficient to support a finding of specific personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985) ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State.").

In sum, the Court has both subject matter and personal jurisdiction over this matter.

### IV.   VIOLATIONS OF FDCPA AND GFBPA

"In enacting the FDCPA, Congress meant to ensure that every individual, whether or not he owes the debt, has a right to be treated in a reasonable or civil manner." *Meadows v. Franklin Collection Service, Inc.*, 414 F. App'x 230, 233 (11th Cir. 2011) (citations and internal quotation marks omitted). In relevant portions, the FDCPA

prohibits the following conduct by debt collectors: (1) "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action" (§ 1692e(4)); (2) "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt" (§ 1692d); and (3) "the threat to take any action that cannot legally be taken or that is not intended to be taken" (§ 1692e(5)).

Based on both Shurley's allegations, and by virtue of McNeil & Myers's default, McNeil & Meyers is a "debt collector" attempting to collect a consumer debt from Shurley and thus subject to the FDCPA. Docs. 1 ¶¶ 7, 15-23; 1-1. Shurley alleges that McNeil & Myers "willfully and intentionally violated the FDCPA." Doc. 1 ¶ 44. Shurley's allegations establish that McNeil & Myers threatened to take action against Shurley it could not take, including numerous false threats to "garnish [Shurley's] wages, place a lien on her property, and place a lien on her grandmother's property." *Id*. ¶¶ 26-27. And the McNeil & Myers employees "purposefully harassed [Shurley] over the phone by being rude, condescending, and treating [her] in an undignified manner." *Id*. ¶ 30. Moreover, McNeil & Myers "communicated with third parties about [Shurley's] [debt] without her permission and otherwise invaded her privacy." *Id*. ¶ 31. Based on these allegations, and by virtue of McNeil & Myers's default, McNeil & Myers violated the provisions of the FDCPA referenced above.

Additionally, a violation of the FDCPA is also a violation of the GFBPA. *Gilmore v. Account Mgmt.*, 357 F. App'x 218, 221 (11th Cir. 2009) (holding that violations of the

FDCA did not violate the GFBPA); *Carlisle v. Nat'l Commer. Servs., Inc.*, 722 F. App'x 864, 869 (11th Cir. 2018) (holding GFBPA violated through a violation of the FDCPA); *Burns v. Halsted Fin. Servs., LLC*, 2016 WL 5417218, at *4 (N.D. Ga. 2016) ("Plaintiff is correct that a violation of the FDCPA also results in a violation of the GFBPA"). Therefore, by virtue of the violations of the FDCPA described above, McNeil & Myers also violated the GFBPA.[2]

## V. DAMAGES

### A. Actual Damages

The FDCPA allows for an award for "any actual damage sustained by" a plaintiff as a result of a violation. 15 U.S.C. § 1692k(a)(1). "Actual damages under the FDCPA include damages for emotional distress." *Minnifield v. Johnson & Freedman, LLC*, 448 F. App'x 914, 916 (11th Cir. 2011).[3] Further, "[i]n determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors (1) . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional . . . ." 15 U.S.C. § 1692k(b)(1).

---

[2] The GFBPA requires plaintiffs to provide a written demand for relief at least 30 days prior to filing suit in order to be entitled to an award of damages unless the "prospective respondent does not maintain a place of business or does not keep assets within the state." O.C.G.A. § 10-1-399(b). Shurley alleges that McNeil & Myers "maintains no assets in the State of Georgia." Docs. 1 ¶ 9; 8-1 at 4. Thus, the notice requirement is inapplicable.

[3] An award of damages for emotional distress under the FDCPA does not require proof of conduct establishing a state law tort claim, such as negligent or intentional infliction of emotional distress. *See Latimore v. Gateway Retrieval, LLC*, 2013 WL 791258, at *10 (N.D. Ga. 2013), *report and recommendation adopted*, 2013 WL 791308 (N.D. Ga. 2013); *McLean v. GMAC Mortg. Corp.*, 595 F.Supp. 2d 1360, 1369 (S.D. Fla. 2009) ("With respect to actual damages, which may include compensation for emotional distress, state law requirements that must be proven to establish negligent or intentional infliction of emotional distress are inapplicable." (emphasis omitted) (citation and internal quotation marks omitted)).

Similarly, the GFBPA allows for an award of actual damages.  *See Small v. Savannah Int'l Motors, Inc.,* 275 Ga. App. 12, 15-16, 619 S.E.2d 738, 743 (2005) ("[T]he measure of damages to be applied for an FBPA violation is that of actual injury suffered . . . 'Actual damages,' for purposes of the FBPA, means relief other than the refund of the purchase price and restitution.").  And the GFBPA requires only "evidence of some actual injury."  *Regency Nissan, Inc. v. Taylor*, 194 Ga. App. 645, 649, 391 S.E.2d 467, 472 (1990).  Emotional distress is an actual injury resulting in actual damages under Georgia law; thus, proof of such an injury can support an award of actual damages.  *See Zieve v. Hairston*, 266 Ga. App. 753, 760, 598 S.E.2d 25, 32 (2004).

Shurley testified that the phone calls and letters caused significant stress.  She even stated she suffered physical symptoms as a result of the threats McNeil & Myers used in its debt collection efforts.  After one phone call, she became "so stressed out . . . that [she] actually threw up in the trash can at my desk at work."  Moreover, as described above, McNeil & Myers's conduct was not only aggressive but also frequent, persistent, and intentional.  The Court finds the evidence establishes Shurley's entitlement to actual damages for emotional distress under both the FDCPA and GFBPA and awards actual damages to the Plaintiff in the amount of $10,000.

**B.    Statutory Damages under the FDCPA**

In addition to actual damages, the FDCPA also allows for the award of "such additional damages as the court may allow, but not exceeding $1,000."  15 U.S.C. § 1692k(a)(2)(A).  It is clear from Shurley's allegations and her testimony that these illegal collection tactics are part of a pattern and practice by McNeil & Meyers.[4]  Given the

---

[4] Additionally, as Shurley points out in her motion for default judgment, there are two other cases filed in district courts against McNeil & Myers alleging similar violations of the FDCPA. Doc. 8-1 at 10-11; *see*

number, frequency, and severity of McNeil & Myers's violations of the FDCPA in this case, the Court finds an award of the statutory maximum of $1,000 to be appropriate. 15 U.S.C. § 1692k(a)(2)(A); 15 U.S.C. § 1692k(b)(1).

**C.    Treble Damages under the FBPA**

Although the GFPBA does not contain a statutory damage provision, a prevailing plaintiff is entitled to recover treble damages if the evidence shows the violation was a result of willful conduct. O.C.G.A. § 10-1-391 *et seq.* The Plaintiff has alleged McNeil & Myers acted pursuant to willful and intentional conduct. Doc. 1 ¶ 44. By virtue of McNeil & Myers's default, it has admitted that its actions were the result of willful or intentional conduct. Thus, the Plaintiff's award of actual damages is trebled by this Court. *See Hebert v. Wallet Recovery Ltd.*, 2014 WL 1653490, at *5 (M.D. Ga. 2014).

**D.    Attorney's Fees and Costs**

Under the FDCPA, a prevailing Plaintiff is entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). "The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citation and quotation marks omitted). This number is called the "lodestar," and "there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Id*. (citation and quotation marks omitted). The district court should exclude "hours that were not reasonably expended," such as work that was "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). In

---

*Lechner v. McNeil & Meyers Asset Management Group, LLC*, E.D. La., 2:17-cv-02438-LMA-KWR;
*Jackson v. McNeil & Meyers Asset Management Group, LLC*, N.D. Tx, 3:17-cv-01891-D.

-8-

determining whether a lodestar is reasonable, the district court should consider twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*: (1) the time and labor required; (2) the novelty and difficulty; (3) the skill required to perform the legal service properly; (4) the opportunity cost of the attorney's inability to work on other cases as a result of accepting this one; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount of money at issue and the results obtained; (9) the experience and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client and (12) attorney's fee awards in similar cases. 488 F.2d 714, 717-19 (5th Cir. 1974) *overruled on other grounds by Blancher v. Bergeron*, 489 U.S. 87 (1989); *see also Blancher*, 489 U.S. at 92 ("*Johnson*'s 'list of 12' thus provides a useful catalog of the many factors to be considered in assessing the reasonableness of an award of attorney's fees."). Downward adjustment of the lodestar is "merited only if the prevailing party was partially successful in its efforts," a determination the district court makes on a case-by-case basis. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993).

By failing to file any response to Plaintiff's Complaint or Motion for Default Judgment, the Defendant has not contested the availability of attorney's fees and costs, the costs incurred by Plaintiff, the time expended by Plaintiff's counsel, the Plaintiff's counsel's rate of $275 per hour, or any of the other *Johnson* factors. The Court is familiar with Plaintiff's counsel and finds the 18.2 hours of time expended by Plaintiff's counsel to be reasonable, and the proposed hourly rate of $275 is reasonable given the experience and reputation of Plaintiff's counsel. Further, the Court finds Plaintiff's

counsel incurred costs in the amount of $450. Thus, Plaintiff is entitled to her attorney's fees in the amounts of $5,005 and costs in the amount of $450.

## VI. CONCLUSION

For the reasons discussed above, the Plaintiff's Motion for Default Judgment is **GRANTED**. The Court finds that the Plaintiff should be awarded $36,455: attorney's fees in the amount of $5,005 (18.2 hours at $275 an hour), statutory damages in the amount of $1,000, actual damages in the amount of $30,000, and $450 in costs. Accordingly, the Defendant is **ORDERED** to pay the Plaintiff $36,455.

**SO ORDERED,** this 24th day of August, 2018.

> S/ Marc T. Treadwell
> MARC T. TREADWELL
> UNITED STATES DISTRICT COURT